## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| RONALD CRAIG WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:18-cv-01747-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Ronald C. Walker, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Walker timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Walker was 55 years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 42, 153.) He has an eighth-grade education. (Tr. at 43, 200.) His past work experiences include employment as a truck driver, dump truck

driver, forklift operator, and tractor operator. (Tr. at 43-45, 229-36.) Walker claims that he became disabled on January 27, 2017, due to a 1983 motorbike accident, which caused a lower back injury and a broken right lower leg. (Tr. at 320-22.) Walker also claims he suffers from a spine disorder, obesity, hypertension, and hypothyroidism. (Tr. 276-310, 320-22.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's physical and mental medically determinable impairments ("MDI"). *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy

the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination

of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Walker met the insured status requirements of the Social Security Act through December 31, 2021. (Tr. at 28.) The ALJ further determined that Walker has not engaged in SGA since January 27, 2017, the alleged onset date of his disability. (Tr. at 28.) According to the ALJ, Walker's allegations of back and knee pain could not be medically determined because the objective medical evidence documents completely normal physical examinations, and Plaintiff repeatedly denied muscle weakness, joint pain, and back pain. (Tr. at 28-30.) Next, the ALJ found that Walker has the following medically determinable impairments (MDI): obesity, hypertension, and hypothyroidism. (Tr. at 28.) However, the ALJ found these impairments or a

combination of these impairments have not significantly limited (or is expected to significantly limit) Walker's ability to perform basic work-related activities for 12 consecutive months. (Tr. at 30.) Therefore, the ALJ determined that Walker does not have a severe impairment or combination of impairments as defined by the regulations. (Tr. at 30.) The ALJ concluded his findings by stating that Walker "has not been under a disability, as defined in the Social Security Act, from January 27, 2017, through the date of this decision." (Tr. at 32.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec*., 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Walker alleges that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ erred in its step-two finding that Walker did not have a

severe impairment or combination of impairments; (B) the ALJ erred in giving no weight to the opinions of Dr. Sathyan Iyer, M.D., a consultative examining physician, and Dr. Robert G. Haas, M.D., a non-examining state agency medical consultant; (C) the Appeals Council erred in denying review based on the evidence he submitted after the ALJ's denial decision; and (D) remand is required pursuant to Sentences Four and Six of 42 U.S.C. § 405(g).

### A. Failure to Find Any Medically Determinable Impairment that is Severe

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any SGA by reason of a medically determinable physical or mental impairment expected to result in death or that can be expected to last twelve or more continuous months. 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether the Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *Id.* An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Ruling(s)

("SSR"s) 88-28, 96-3p, and 96-4p. The burden of showing that an impairment or combination of impairments is "severe" rests at all times with the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Here, the ALJ concluded during the relevant period from Walker's alleged onset date of January 27, 2017, through the date of his decision that Walker did not have a severe medically determinable impairment (MDI) that had lasted or could be expected to last for a continuous period of at least twelve months or result in death. (Tr. at 30.) For the reasons that follow, substantial evidence supports the ALJ's decision on this point.

### 1. Hypertension and hypothyroidism

Walker contends that his hypertension and hypothyroidism are severe, but the objective medical evidence shows otherwise. (Tr. at 279-310, 320-22.) The ALJ noted that his MDIs of hypertension and hypothyroidism were present, but there was no evidence that these imposed any work-related limitations based on the available medical evidence for the relevant period. (Tr. at 31.) *See* 20 C.F.R. §§ 404.1520(c); 416.920(c); *Bridges v. Bowen,* 815 F.2d 622, 625 (1987) (finding that an impairment or combination of impairments that does not "significantly limit" claimant's ability to do basic work is not "severe"). Furthermore, the ALJ reasonably

concluded that Walker's treatment records consisted of routine annual examinations that document he had taken "medications for years with no problems or reported side effects" for his hypertension and hypothyroidism. (Tr. at 31, 279-310, 320-22.) Specifically, the ALJ found that in February 2017, after his alleged onset date of disability, Walker reported his symptoms for hypertension and hypothyroidism were controlled on medications. (Tr. at 31, 282.) Dr. Iyer noted that Walker's hypertension was also controlled. (Id.)

### 2. Obesity

Walker also alleges that he has a severe MDI of obesity. However, the ALJ noted that the obesity impairment has not stopped Walker from working in the past. (Tr. at 31, 43-56, 210-11, 229-36.) In addition, the ALJ stated that none of Walker's physicians found he has any limitations due to his obesity impairment. (Tr. at 31, 279-310, 320-22.) Indeed, Walker did not testify his obesity caused him any limitations. (Tr. at 43-45, 46-56.) Therefore, the ALJ determined that Walker's obesity is not a severe impairment because the objective medical evidence does not show it caused him any limitations. (Tr. at 31.)

### 3. Knee and back pain

Walker also alleges he suffers from severe MDIs of back pain and knee pain. But as the ALJ correctly noted, they are not even MDIs. (Tr. at 28-30.) Because

Plaintiff bore the burden of proving he had a severe impairment, he thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1278.

"In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step [two] of the sequential evaluation process." SSR 96-4p. The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 404.1508 (an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [individuals'] statement[s] of symptoms"); *see also* 20 C.F.R. § 404.1528 (defining symptoms, signs, and laboratory findings). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p.

Walker testified that he stopped working because of his back problems, dizzy spells, and because his knee kept locking up. (Tr. at 28-29, 43, 49-50.) He alleged sharp pain in his back and that he was no longer able to sit or stand for long periods

of time due to his knees and lower back problems. (Tr. at 29, 50.) Dr. Iyer, the consultative physical examiner, opined that Walker had a "possible" degenerative joint disease of the lumbar spine. (Tr. at 316.) Dr. Haas, a non-examining state agency medical consultant, diagnosed him with a "spine disorder." (Tr. at 70-74.) However, the ALJ properly assigned no weight to the opinions of both Dr. Iyer and Dr. Haas because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. at 29-32.)

Walker has consistently denied muscle weakness, joint pain, and back pain at his annual physical examinations during the relevant period. (Tr. at 29, 49-51, 282, 285, 288, 291, 295, 306.) Additionally, Walker essentially had normal physical examinations as shown through the objective medical evidence for the relevant period. (Tr. at 29, 283, 286, 289, 292, 295-96, 303, 307, 309-10.) During these routine physical examinations from February 2013 to February 2017, Walker only sought treatment for his hypertension and hypothyroidism. (Tr. at 29, 279-310.) The ALJ also noted that there are only two medical examinations from the relevant period: a November 1, 2017, examination during which Walker complained of knee pain; and a January 22, 2018, examination during which Walker complained of back pain. (Tr. at 29, 320, 322.) However, at the same exam in November 2017, Walker's knee exam was normal. (Tr. at 320.) As for the January 2018 exam, the ALJ noted

there is no imaging in Walker's treatment records to corroborate his allegations of back pain. (Tr. 29.)

Moreover, the ALJ pointed out that the treatment notes between November 2017 and January 2018 are the only records documenting reports of pain. (Tr. at 29.) There is also no imaging in Walker's records to corroborate his allegations of knee and back pain as noted by the ALJ. (Tr. at 29.) Notably, Walker testified that he did not take any prescribed medication for pain, but only over-the-counter medication for swelling in his right leg. (Tr. at 29, 51, 54.) The ALJ also noted that Walker worked for several years after his 1983 accident and he presented minimal evidence of a disability after his alleged onset date of January 27, 2017. (Tr. at 229.) In fact, there are only six pages of treatment notes from the relevant period, which do not establish MDIs related to Walker's back or knee. (Tr. at 282-84, 320-22.) The six-page records do not show that Walker complained about back or knee pain for a continuous period of at least 12 months. (Tr. at 282-84, 320-22.)

In sum, the ALJ considered the various physicians' opinions as well as the objective medical evidence in finding that Walker's alleged back pain and knee pain were not MDIs. Walker's case is very similar to *Bullard v. Comm'r of Soc. Sec.*, where a claimant did not submit any medical records, evidence, or testing that indicated a disability during the relevant time period. *See* 752 F. App'x 753, 755 (11th Cir.

2018). The court in *Bullard* found that the claimant's testimony concerning his 1980 accident did not demonstrate a disabling impairment both because the accident occurred prior to his alleged disability onset date and because the claimant's earnings records show that he worked for several years after the 1980 accident. *See Id.* Here, Walker was involved in an accident in 1983 that did not demonstrate a disabling impairment both because the accident occurred prior to his alleged disability onset date and because Walker's earning records show that he worked for several years after his 1983 accident. (Tr. at 167-97.)

For all these reasons, substantial evidence supports the ALJ's determination that Walker does not have any MDIs that are severe during the relevant time period, and thus that he is not disabled within the meaning of the Social Security Act.

### B. Weight to Opinion of Consultative Examiner and a Non-Examining State Agency Medical Consultant

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the

claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . .." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or

consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a doctor who conducted a single examination and who was not a treating doctor). Importantly, however, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

### 1. Consultative Examiner, Dr. Iyer

Walker was examined by Dr. Iyer on April 10, 2017, as part of his Social Security disability benefits application. (Tr. at 314.) At the examination, Walker described lower back pain and decreased memory. (*Id*.) The physical examination conducted by Dr. Iyer was generally normal. (Tr. at 314-15.) Dr. Iyer stated that Walker "could have impairment of functions involving standing for long periods, walking long distance, bending, lifting, overhead activities, pushing, and pulling." (Tr. at 316.) Ultimately, Dr. Iyer found that Walker "does not have any other significant physical limitation." (*Id*.)

Substantial evidence supports the ALJ's decision to afford no weight to Dr. Iyer's opinion. First, Dr. Iyer's opinion was conclusory, failing to support his

conclusions with objective examination notes. (Tr. at 29.) *See Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.") As the ALJ noted, Dr. Iyer's opinion is not consistent with the few physical findings he noted. (Tr. at 29.) Dr. Iyer's physical examination noted that Walker's gait is normal; his grip strength is normal; his muscle power is normal; he had a full range of motion of his neck, shoulders, elbows, and wrists; he had a full range of motion of his hips, knees, and ankles; his nervous system is normal; and he had a full extension, lateral flexion, and rotation motions of his lumbar spine. (Tr. at 29, 315-16.) However, Dr. Iyer diagnosed Walker with a history of motorbike accident resulting in injury to the lower back and fracture of the right lower leg, possible DJD of the lumbar spine, overweight, and hypertension, controlled. (Tr. at 316.)

Second, Dr. Iyer's opinion is inconsistent with Walker's other normal physical examinations from the relevant period. (Tr. at 29, 283, 286, 289, 292, 295-96, 303, 307, 309-10.) The ALJ noted that Dr. Iyer's opinion was related to old issues, namely Walker's 1983 motorbike accident. (Tr. at 314-15.) The abnormalities that Dr. Iyer did mention did not result in any significant limitations. (*Id*.) The ALJ further pointed

out that Walker had denied muscle weakness, joint pain, and back pain at several of his routine physical examinations. (Tr. at 29, 288, 291, 295, 302-03, 306.) In addition, the ALJ reasoned that Dr. Iyer relied heavily on Walker's subjective complaints in forming his opinion that was not supported by Dr. Iyer's physical examination findings. (Tr. at 29, 314-15.) *See Crawford*, 363 F.3d at 1159 (discrediting a physician's opinion that was "inconsistent with his own treatment notes, unsupported by the medical evidence, and appears to be based primarily on [claimant's] subjective complaints of pain.")

As demonstrated above, substantial evidence supports the ALJ assigning no weight to Dr. Iyer's opinion because it is inconsistent with his own physical examination and the other medical evidence in the record.

### 2. Non-Examining State Agency Medical Consultant, Dr. Haas

On April 17, 2017, Dr. Haas, a non-examining state agency medical consultant, reviewed the evidence in the record and issued an opinion that Walker's obesity and spine disorder impairments were severe impairments that limited him to light work. (Tr. at 70-74.) He further opined that in an 8-hour workday Walker could lift up to 20 pounds, stand up to 6 hours, sit up to 6 hours, occasionally climb stairs, occasionally stoop, occasionally kneel, occasionally

crouch, and occasionally crawl. (*Id*.) Dr. Haas further noted no limitations on Walker's ability to tolerate humidity, wetness, and noise. (Tr. at 73.)

The ALJ considered this opinion and gave it no weight because it was inconsistent with the objective medical evidence. (Tr. at 31-32.) Substantial evidence supports the ALJ's decision here. Specifically, Walker's alleged spine disorder was not a severe impairment because there was no evidence of even a MDI of his spine. (Tr. at 32.) Indeed, Walker has consistently denied muscle weakness, joint pain, and back pain. (Tr. at 29, 288, 291, 295, 302-03, 306.) As discussed previously, the ALJ noted that Dr. Iyer's physical examination determined that Walker had full range of motion throughout, except he had a slight reduced range of motion in the lumbar spine with flexion only 80/90. (Tr. at 29, 315-18.) The ALJ also pointed out that Dr. Iyer found Walker had full range of motion with all other maneuvers (extension, lateral flexion, and rotation motions) in the lumbar spine. (Tr. at 29, 315-318.)

Dr. Haas's opinion that Walker's alleged obesity disorder was a severe impairment was also inconsistent with the objective medical evidence. (Tr. at 31-32.) At Walker's consultative physical examination with Dr. Iyer, Walker weighed 280 pounds. (Tr. at 314-15.) Dr. Iyer did not mention any limitations or disability due to this impairment. (Tr. at 314-18.) Walker also did not complain of any

difficulties to Dr. Iyer regarding his obesity. (*Id*.) Additionally, Walker did not testify to any limitations associated with obesity. (Tr. at 31, 43-45, 46-52.) The ALJ also noted that none of Walker's physicians stated that he had any limitations due to his obesity. (Tr. at 31, 279-310, 320-22.)

In sum, substantial evidence supports the ALJ's conclusion to assign no weight to Dr. Haas's opinion because it was inconsistent with the objective medical evidence and the physical examinations in the record.

### C. Appeals Council Review

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). It is chronologically relevant if "it relates

to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

The ALJ issued his decision on April 11, 2018. (Tr. at 32.) Walker subsequently submitted three new pieces of evidence to the Appeals Council: (1) an x-ray of his right foot from April 24, 2018; (2) a magnetic resonance imaging (MRI) of his spine from May 10, 2018; and (3) a physical capacities evaluation form completed by Dr. William Hartzog, from May 7, 2018, at the Etowah Free Community Clinic (Clinic). (Tr. at 14-22.) Walker now argues that this medical evidence from after the ALJ's decision warranted remand because the exam shows he had greater physical limitations than found by the ALJ.

More specifically, Walker first sought an x-ray of his right foot and ankle from Dr. Kennon Hager, a radiologist, on April 24, 2018, a few weeks after the ALJ's decision. (Tr. at 15.) The x-ray of his right foot showed "minimal DJD in the toes and mid foot and minor posterior talar spurring." (Tr. at 15.) The x-ray of his right ankle also showed "minor DJD" and "no significant additional focal or acute ankle abnormalities." (Tr. at 16.) Ultimately, Dr. Hager's impression was that Walker has

"mild-to-moderate degenerative changes in the foot and ankle." (Tr. at 16.) The MRI of his lumbar spine conducted on May 10, 2018, showed "mild diffuse disc bulging at 1/2 and 2/3 with mild diffuse changes of 4/5 and 5/1." (Tr. at 17.) Then, Walker sought a physical examination from Dr. Hartzog. (Tr. at 14.) On the physical capacities form, Dr. Hartzog opined that Walker would be off-task 25 percent of the time on a normal workday. (*Id.*) Dr. Hartzog also determined that in a 30-day period, Walker would fail to report to work on 10 days because of his physical symptoms. (*Id.*) However, neither the physical capacities evaluation nor any other medical evidence from the Clinic supports Dr. Hartzog's opinion. (Tr. at 14-22.) Dr. Hartzog's opinion provides conclusory statements that have no support from the objective medical evidence. (Tr. at 14-22.)

Dr. Hartzog's opinion regarding how long Plaintiff can sit and stand is unclear. He circled both "<15 minutes" and "2 hours." (Tr. at 14.) This opinion is internally inconsistent. Similarly, Dr. Hartzog's opinion regarding how much time during an 8-hour workday Plaintiff would need to lie down is internally inconsistent as he circled both "<30 minutes" and "4 hours." (*Id.*)

Additionally, Walker complained of right foot pain for the first time on April 24, 2018. (Tr. at 320-22.) The x-rays and MRI ordered by Dr. Hartzog do not support his opinion. The x-ray of the right foot showed "minimal" degenerative disk disease

in the toes and mid foot and "minor" posterior talar spurring. (Tr. at 15.) The x-ray of the right ankle also showed "minor" degenerative disc disease, and "[n]o significant additional focal or acute ankle abnormalities." (Tr. at 16.)

Furthermore, as previously discussed, the treatment records, including those from the Clinic, do not support a MDI related to Walker's alleged back pain. (Tr. at 37-38, 282-310, 320-22.) Walker points to an MRI of his lumbar spine taken on May 10, 2018 that shows mild diffuse disc bulging at L1-L2 and L2-L3 with mild diffuse changes at L4-L5 and L5-S1. (Tr. at 17.) However, Walker does not explain why this MRI would change the outcome of his claim, considering that the medical records from 13 months prior contain an MRI that shows mild findings at L4-L5 and L5-S1. (Tr. at 319.)

The Appeals Council stated in its denial of review that there is not reasonable probability that this evidence would change the outcome of the ALJ's decision. (Tr. at 2.) Walker admits that all of the medical evaluations occurred after the ALJ's decision but argues that they are chronologically relevant because they concern treatment of conditions that he had prior to the decision. While Plaintiff relies upon *Washington v. Social Security Administration*, 806 F.3d 1317 (11th Cir. 2015), in which the Eleventh Circuit stated that "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant," the

case is distinguishable. In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. *Washington,* 806 F.3d at 1319-20.

The court concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id*. at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case"). The Eleventh Circuit has recently declined to extend its holding beyond *Washington* in several cases. *See*, *e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309-10 (11th Cir. 2018) (distinguishing *Washington* because "nothing in these new medical records indicates the doctors considered Hargress's past medical records or that the information in them relates to the period at issue," and because, even assuming they were chronologically relevant, they were not material because there was no reasonable possibility that they would change the administrative result).

Unlike in *Washington,* the Appeals Council in this case did not find that the evidence, including Dr. Hartzog's opinion, was about a later time. (Tr. at 2.) Rather,

the Appeals Council found that Dr. Hartzog's opinion is chronologically relevant because even though his opinion postdates the ALJ's decision, it purports to relate back to the relevant period. (Tr. at 2, 14.) Specifically, Dr. Hartzog stated that Walker's limitations existed back to January 27, 2017, but the Appeals Council nevertheless found that Dr. Hartzog's opinion does not show a reasonable probability that it would change the outcome of the decision. (Tr. at 2, 14.) Dr. Hartzog based his opinion only on his one-time examination of Walker along with the x-ray and MRI that were done after the ALJ's decision. (Tr. at 14-22.)

### D. Sentence Four & Six Remands

Walker has filed a separate "motion to remand pursuant to sentences four and six." (Doc. 14.) He first claims that a favorable decision on a subsequent application for SSI that was issued after the Appeals Council denied review in his case warrants remand for administrative consideration under Sentence Six of 42 USC § 405(g). "Sentence Six" of 42 USC § 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (The sixth sentence allows the taking of "new evidence . . . that was not available to the claimant at the time of the administrative proceeding.").

"Sentence Four" of 42 U.S.C. § 405(g) "permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence." *See Falge v. Apfel,* 150 F.3d 1320, 1323 (11th Cir. 1998). To obtain a remand under that provision, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *See Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir. 1986). "A decision is not evidence any more than evidence is a decision." *See Hunter v. Comm'r of Soc. Sec.,*

808 F.3d 818 (11th Cir. 2015). Therefore, "a later favorable decision is not evidence for §405(g) purposes." *See Id.*

Conversely, a claimant may seek a remand based on evidence that was properly before the Commissioner under Sentence Four of 42 U.S.C. § 405(g), if he shows that the decision to deny benefits was not supported by substantial evidence in the record as a whole based on the evidence that the Appeals Council did not adequately consider. *See Ingram,* 496 F.3d at 1266–68. Remand is appropriate under Sentence Four when "the Appeals Council did not adequately consider the additional evidence." *See Ingram,* 496 F.3d at 1268 citing *Bowen v. Heckler,* 748 F.2d, 629, 636 (11th Cir. 1984). In determining whether substantial evidence supports a decision, this court gives great deference to the ALJ findings. *See Black Diamond Coal Min. Co.,* 95 F.3d 1079, 1082 (11th Cir. 1996).

Walker points to no other newly discovered material, but the favorable SSI decision. The Eleventh Circuit has expressly held that if the only "new evidence" a claimant provides in support of his request for remand is a later favorable decision that is not evidence for purposes of Sentence Six remand. *See Hunter,* 808 F.3d at 822; *see Arnold v. Comm'r of Soc. Sec.*, 724 F. App'x 772, 821-22 (11th Cir. 2015) (denying a sentence-six remand based on a subsequent notice of award). The Court explained that a notice of award is not by itself "new and material evidence

warranting a remand of a prior denial of benefits" and that "the existence of a later favorable decision from the Social Security Administration [does not] undermine the validity of a previous denial of benefits." *See Arnold*, 724 F. App'x at 783 (citing *Hunter*, 808 F.3d at 821-22).

Walker next contends that a Sentence Four remand is warranted for the same reasons he offered in his briefs. Namely, Walker challenges that the ALJ refused to review a functional capacity evaluation by his treating physician and rejected the opinion of Dr. Iyer, the Commissioner's examining physician. For reasons already discussed in detail above, the ALJ properly considered doctors' reports, medical records, testimony of vocational experts, and other evidence. Reasonable minds could accept that evidence, taken together, as sufficient to support the ALJ's conclusion that Walker was able to perform basic work-related activities for 12 consecutive months.

## IV. Conclusion

Upon review of the administrative record, and considering all of Walker's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The motion to remand is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** on March 5, 2020.

_____
L. Scott Coogler
United States District Judge

201416